```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA


THOMAS DELOR                                    CIVIL ACTION

VERSUS                                          NO: 04-3262

INTERCOSMOS MEDIA GROUP,                        SECTION: "J"(2)
INC.
```

### ORDER AND REASONS

Before the Court is Defendant's second **Motion to Dismiss** pursuant to Federal Rule of Civil Procedure 17. Rec. Doc. 124. Because the motion relies on matters outside the pleadings, the Court converted the motion to one for summary judgment. Rec. Doc. 138. Plaintiff opposes the motion. The Court held oral argument on the motion on Wednesday, November 16, 2005.[1] For the reasons which follow the Court finds that defendant's motion should be granted, and further, that plaintiff's claims should be dismissed with prejudice.

---

[1] For the convenience of plaintiff and at his request, plaintiff was allowed to participate by telephone.

**BACKGROUND**

This suit involves a dispute over the domain name 1800asSeenonTV.com. The plaintiff filed suit alleging that he owns the domain name and that the defendant improperly transferred ownership of this domain name to a third party who is not the registered domain name holder of the domain name. Earlier this year, the defendant moved to dismiss plaintiff's claims arguing that plaintiff was not the real party in interest to prosecute the claim, contending that the domain name was owned by Delor & Associates, Inc. ("DAI"), a Georgia corporation. Defendant further argued that plaintiff could not maintain this action on behalf of a corporation since he is not a licensed attorney.

Plaintiff opposed the motion arguing that the domain name was owned by a Florida unincorporated association, Delor and Associates, and that as a member of the association, he could maintain the suit. In support of this position, plaintiff submitted documentation suggesting that Delor and Associates was the original registrant on March 19, 1999, and that while DAI came into existence on August 14, 2000, Delor and Associates never transferred its interest in the domain name to DAI. Based on those submissions, the Court concluded that ownership remained with the unincorporated association of which plaintiff Thomas

2

Delor was a member, and thus found that Thomas Delor was a proper party to bring the suit. Rec. Doc. 34.

Several months later, defendant moved again for dismissal arguing that it had uncovered new evidence establishing that Thomas Delor is not the real party in interest in the lawsuit. Defendant has submitted four documents, as well as the sworn deposition testimony of plaintiff taken in this lawsuit, suggesting that the owner of the domain name in January of 2002 was the Georgia corporation, DAI. The four documents, three of which predate the January 29, 2002 domain name transfer of which Mr. Delor complains, are (1) a purchase agreement dated June 21, 2000 between DAI and Reliant Interactive Media Corp. ("Reliant"), which describes DAI as the "Seller" and owner of the domain name; (2) a pleading filed on April 4, 2001 in a Florida state court suit brought by Reliant against Mr. Delor and DAI stating that DAI owns the domain name; (3) a stipulation between Reliant and DAI that resulted in a court order dated April 18, 2001 naming DAI as owner of the domain name; and (4) a settlement agreement between Reliant, DAI, and Mr. Delor, executed on June 18, 2002 and resolving the claims in the Florida state court litigation.

The Court has examined the documents and reviewed the deposition testimony and has concluded that in fact, DAI was the owner of the domain name at the relevant time, and thus Thomas

3

Delor is not a proper party to bring this suit.  In addition, because the confusion surrounding the ownership of the domain name was caused by Delor's untruthfulness to both opposing counsel and the Court, this matter should be dismissed with prejudice.

## DISCUSSION

The law relevant to this instant motion is straightforward: under Federal Rule 17(a), all actions shall be prosecuted in the name of the real party in interest.  The real party in interest is the person holding the substantive right sought to be enforced, not necessarily the person who will benefit from the recovery.  <u>Wieburg v. GTE Southwest, Inc.</u>, 272 F.3d 302, 306 (5th Cir. 2001)(quotations omitted).  In the instant case the proper party to bring this action is the owner of the domain name 1800AsSeenOnTV.com.  Despite the Court's earlier ruling that the owner was a Florida unincorporated association, Delor & Associates ("DA"), newly discovered evidence in the record reveals that the owner of the domain name at the time suit was commenced was DAI, not Thomas Delor or DA.

### 1. *The Purchase Agreement*

As previously noted, DAI was formed on August 14, 2000.  A few weeks later, DAI entered into a "Web Site and Intellectual Property Purchase Agreement" ("Agreement") with Reliant for the

4

sale of a number of items, including the domain name at issue herein, which was effective September 9, 2000.  Rec. Doc. 124, Exh. B.  The opening paragraph of the Agreement defines Reliant as the "Buyer" and DAI as the "Seller."  The contract provides in part:

> WHEREAS, **Seller [DAI] owns all rights, title and interest** in and to that Web Site with a URL designation [www.1800AsSeenOnTV.com,](www.1800AsSeenOnTV.com,) the vanity toll free telephone number 1800AsSeenOnTV (1-800-277-3366), the Internet Keyword with Realnames.com of "asseenontv" and "1 800 as seen on tv" and other websites utilizing various derivatives of "As Seen On TV" (herein collectively referred to as "1800ASOTV Properties)....

Id., Exh. B at 1 (emphasis added).  Additionally, in the section captioned "Seller's Representations and Warranties," the Agreement provides:

> Seller [DAI] is the only legal, record and beneficial owner of 1800ASOTV Properties and the ownership is free and clear of all liens, pledges, security interests, irrevocable proxies, encumbrances or restrictions of any kind.  The interest in 1800ASOTV Properties when conveyed to Buyer will be free and clear of all liens, pledges, security interests, irrevocable proxies, encumbrances or restrictions of any kind.  **Seller represents that any of the 1800 ASOTV Properties that may have been owned by Thomas Delor, Tom Delor or any other party have been legally transferred to Seller [DAI] prior the execution of this Agreement.**

Id., Exh. B, § 5.2 at 7-8 (emphasis added).

Finally, in the signature block at the end of the agreement, Mr. Delor signed in his capacity of President of DAI, affirming that the Agreement was entered into on behalf of the corporation

5

DAI, not on behalf of Delor personally or an unincorporated association.  Id., Exh. B. at 17.

### 2. *Answer and Counterclaim in Florida State Court Litigation*

On March 14, 2001, Reliant filed suit against DAI and Thomas Delor based on the Agreement.  Id., Exh. D.  In the Answer and Counterclaim filed in response to that suit Delor (who signed the pleadings), made the following averments:  "at all times material prior to September, 2000, DeLOR AND ASSOCIATES, INC. owned and still owns certain intellectual property described in Paragraph 7."  Id. at ¶ 4.  Paragraph 7 stated that "DeLOR AND ASSOCIATES, INC. still owns the vanity 1800ASOTV Properties."  Id.  Paragraph 9 reiterated:  "DeLOR AND ASSOCIATES, INC. still owns the properties."  Id.  The clear import of this pleading is that DAI owned the domain name, and that Thomas Delor was fully cognizant of that fact.

### 3. *The Stipulation and Court Order*

On March 16, 2001, Reliant and DAI reached a second agreement in the form of a letter from the attorney for Thomas Delor and DAI to the attorney for Reliant.  The purpose of the letter agreement was to restore the parties to the status quo prior to litigation, and thus the parties agreed that:

> Plaintiff [Reliant] and defendants [DAI and Mr. Delor] will cooperate to cause the following designations to

6

> occur with InterNic.  It is the parties [sic] understanding that **these designations were in place immediately prior to the latest change** by the defendant:
>
> **Owner:   DeLor and Associates, Inc.**

Rec. Doc. 124, Exh. F (emphasis added).  Thus, it is obvious that whatever dispute existed between Reliant, DAI, and Delor at the time the agreement was countersigned, the status quo <u>ante</u> was that DAI was the owner of the domain name.  A subsequent court order incorporated this agreement by reference, ruling that "the terms of [the agreement quoted above] shall govern in this case unless  a party applies to the Court for relief therefrom." <u>Order on Plaintiff's Motion for Temporary Injunction and Status Conference Order</u>, <u>id.</u>, Exh. F at 2-3.  There is no record that any party applied for relief from the agreement designating (or more correctly, re-designating) DAI as owner of the domain name at issue herein.

### *4.*   *The Settlement Agreement*

The Florida state litigation was resolved by a settlement agreement entered into on June 18, 2002. Rec. Doc. 229, Exh. A. Under the compromise, Reliant committed to "use reasonable efforts to persuade Fasano to return the domain to Delor and

Associates [Inc.]."[2]  Clearly, an agreement to *return* the domain to DAI presupposes that the original owner was DAI.

In addition, the settlement agreement incorporated by reference a press release containing the following language: "Reliant Interactive Media Corp. ("Reliant") and Delor and Associates, Inc. ("Delor and Associates") jointly announce that they have reached a mutually satisfactory settlement in two lawsuits concerning certain intellectual property associated with the "1800AsSeenOnTV" concept."  This representation reconfirms that DAI, and not DA, was the entity who owned the domain name and entered into the purchase agreement[3] which spawned the Florida state court litigation put to rest by the settlement agreement.

---

[2] The Agreement states at the outset that Delor and Associates, Inc. will be referred to as "Delor and Associates" throughout the agreement.  The "Inc." is inserted here to make clarify that it is the corporation, not the unincorporated association, that is being referenced.

[3] At oral argument, plaintiff suggested that the contract with Reliant was not a purchasing agreement but a licensing agreement, and that the distinction was relevant to the issues herein.  As the Court's instant analysis makes plain, that distinction has no relevance whatsoever.  The documents referenced are relied on solely for the purpose of demonstrating that prior to January, 2002, all affirmative evidence points to the fact that the owner of the domain name (and thus the entity with authority to sell or license it – it matters not which), was DAI, not DA.

### 5. *Plaintiff's Deposition Testimony*

Perhaps most damaging to plaintiff's position, however, are his own words. In his deposition in this case taken this year, plaintiff was asked the following question related to the purchase agreement with Reliant: "But the party that was agreeing with Reliant to provide 1800AsSeenOnTV.com was your corporation, wasn't it?" To which plaintiff responded: "yes, Because I assigned – **they asked me to assign any rights from me personally to the corporation, which I did.**" 2005 Depo. of Thomas Delor, Rec. Doc. 218, Exh. G, 262:16-21 (emphasis added). While in his subsequent testimony plaintiff attempts to argue that his assignment of the rights and the domain name involved the assignment of something short of full ownership, it is belied by all of the documents discussed above, and his further testimony:

> Q:   Who signed the agreement?
>
> A: [by Plaintiff]:   I did as the president.
>
> Q:   As the president. So you signed it on behalf of the corporation?
>
> A:   Yes.

Id. at 264:20-24.

Thus, four separate pieces of documentary evidence, all of which the plaintiff herein was extremely well aware, and to which

he had far better access than defendant, plus plaintiff's own sworn testimony in this case, demonstrate that the owner of the domain name during the period in question was not DA, the unincorporated association, but DAI.

Plaintiff has attempted to counter this overwhelming evidence with four arguments.  First, he claims that because the undersigned concluded in its prior order, entered April 14, 2005 (Rec. Doc. 34), that DA and not DAI was the owner, that this point is conclusively established and cannot be undermined by the subsequently discovered evidence.  Notwithstanding the fact that Rule 60(b) specifically provides for a new trial when newly discovered evidence is brought to light, the Court is particularly galled by plaintiff's argument on this point because the conclusion reached in the Court's initial ruling was made without the benefit of contradictory evidence *which was in plaintiff's possession the entire time*, and which required defendant to expend large amounts of money and time to uncover.

Plaintiff's second argument is that DA must have owned the domain name in January, 2002, because at that time, the ICANN registry listed DA as the owner, and Intercosmos cannot show that DA transferred its interest to DAI.  However, in January, 2002, the Florida state court order entered on April 20, 2001 was still in effect and binding on the parties.  That order establishes unequivocally that the owner of the domain name was DeLor and

10

Associates, Inc.

Third, plaintiff originally challenged the authenticity of the documents relied upon by Intercosmos to demonstrate DAI's ownership, even though all four of the documents were signed by plaintiff or his attorneys, and the settlement agreement was provided by plaintiff himself, and thus their authenticity could quickly and easily be established by plaintiff himself.  At oral argument, when reminded by the Court of its previous order that plaintiff would be sanctioned if he raised an authenticity objection that was later found to be frivolous, plaintiff withdrew his authenticity objection and this line of argument.

Plaintiff's final argument made during the hearing hardly bears discussing.  In brief, plaintiff stated during oral argument that he "might have been lying" when he made the previous representations to Reliant and the Florida state court that the domain name was owned free and clear by DAI and that he was acting on DAI's behalf in his capacity as president. Apparently, plaintiff wishes the undersigned to believe that he was lying then but is telling the truth now.  The Court rejects this insulting argument, and chooses to rely on the written evidence, bearing plaintiff's signature, including representations made to the Florida court.  This evidence, as well as plaintiff's own testimony, points in one direction:  DAI owned the domain name on January 29, 2002.  Accordingly, DAI (not

11

Thomas Delor) is the real party in interest to bring this suit, and Delor may not prosecute this suit pro se.  Fed. R. Civ. P. 17(a).  No *genuine* issue of material fact exists on this point, and defendant is thus entitled to summary judgment dismissing plaintiff's claims.  Fed. R. Civ. P. 56(c).

### *Dismissal under Rule 17*

Rule 17(a) also provides that "[n]o action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest. . . ."  Fed. Rule Civ. P. 17(a).  However, this provision has not been interpreted as providing carte blanche for the real party in interest to ratify or join an action or substitute as party plaintiff at any point.  Rather, as the Fifth Circuit has observed and the Advisory Committee Notes state, "this provision was added 'simply in the interests of justice' and 'is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made.'" Wieburg, 272 F.3d at 308 (quoting Fed. R. Civ. P. 17(a) Advisory Committee Notes, 1966 Amendment).  "In accordance with the Advisory Committee's note, most courts have interpreted the last sentence of Rule 17(a) as being applicable only when the plaintiff brought the action in her own name **as the**

**result of an understandable mistake, because the determination of the correct party to bring the action is difficult.**" Id., (citing Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11, 20 (2d Cir. 1997)(district court retains discretion to dismiss action where there was no reasonable basis for naming incorrect party); Feist v. Consolidated Freightways Corp., 100 F. Supp. 2d 273, 276 aff'd, 216 F.3d 1075 (3d Cir. 2000), cert. denied, 532 U.S. 920, (2001)("Rule 17(a) should not be applied blindly to permit substitution of the real party in interest in every case. In order to substitute the trustee as the real party in interest, Plaintiff must first establish that when he brought this action in his own name, he did so as the result of an honest and understandable mistake."); Lans v. Gateway 2000, Inc., 84 F. Supp. 2d 112, 120 (D.D.C.1999) ("it is appropriate to liberally grant leave to substitute a real party in interest when there has been an honest mistake in choosing the nominal plaintiff, meaning that determination of the proper party was somehow difficult at the time of the filing of the suit, or that the mistake is otherwise understandable."), aff'd, 252 F.3d 1320 (Fed. Cir. 2001)(other citations omitted)(emphasis added).

In this case, plaintiff simply cannot maintain that he brought this action in his own name due to an **honest** and **understandable mistake** because of the difficulty in determining the correct party to bring the action, and that he moved within a

reasonable time to correct the error.  Rather, plaintiff was a party to the original transfer and knew precisely who owned the domain name, and has been in possession of documents since long before this litigation commenced reflecting that DAI, not Delor and Associates, owned the domain name.  When defendant squarely raised the issue of the ownership of the domain name in its motion filed March 11, 2005, plaintiff failed to disclose the transfer of ownership allowing the Court to erroneously conclude Delor and Associates owned the domain name and that plaintiff was a proper party.  Further, when the Rule 17 objection was raised, plaintiff did not move to substitute, but rather continued to misrepresent facts to opposing counsel and to the Court.  As a result, defendant was forced to travel to Florida and undergo great expense in terms of time and money to get to the bottom of the ownership of this domain name, a fact which plaintiff has known the entire time.

  The Court considers these facts to present the same type of unusual circumstances present in Lans v. Digital Equipment Corp., 252 F.3d 1320 (Fed. Cir. 2001).  In that case, the plaintiff, Mr. Lans, purported to own a patent that he had previously transferred to another company, Uniboard Aktiebolag, a company whose managing director and sole shareholder was Mr. Lans.  Id. at 1324-25.  "Mr. Lans did not disclose the actual owner until the [defendants] discovered the assignment to Uniboard, and even

14

then he equivocated.  Thus, **Mr. Lans's personal choices occasioned his standing problems and the need to amend**." Id. at 1328 (emphasis added).  The trial court had found that Mr. Lans's original allegations were not "honest and understandable mistakes." Id.  Thus, the appellate court found that the district court remained well within its broad discretion in denying Mr. Lans's motion for leave to amend his complaint." Id. at 1329.

Similarly, the Court finds that in the instant case, plaintiff's problems are of his own making, due largely to his intentional misrepresentations to opposing counsel and this Court.  Dismissal is therefore warranted.  Accordingly,

**IT IS ORDERED** that defendant's **Motion to Dismiss** (which the Court has construed as one for summary judgment)(Rec. Doc. 24) should be **GRANTED,** and plaintiff's claims against defendant Intercosmos Media Group, Inc. are hereby **DISMISSED with PREJUDICE**;

**IT IS FURTHER ORDERED** that plaintiff's **Motion for Sanctions** (Rec. Doc. 71) is **DENIED**;[4]

---

[4]The motion for sanctions was raised by plaintiff within an opposition memorandum (Rec. Doc. 71) filed in response to Intercosmos' previously filed motion to dismiss for lack of jurisdiction (Rec. Doc. 61).  In ruling on the motion to dismiss without granting sanctions, the Court impliedly denied the sanctions motion.  However, for clarification purposes, the Court now explicitly denies the motion.

15

**IT IS FURTHER ORDERED** that plaintiff's **Motion to Prove Authenticity** (Rec. Doc. 161) is **DENIED**;

**IT IS FURTHER ORDERED** that the following motions are **DENIED as MOOT**:  plaintiff's **Motion for Summary Judgment** (Rec. Doc. 100); Intercosmos' two **Motions for Partial Summary Judgment** (Rec. Docs. 126 and 133); and plaintiff's **Motion for Partial Summary Judgment** (Rec. Doc. 244).

New Orleans, Louisiana, this __18th__ day of November, 2005.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE