UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

THOMAS DELOR                                    CIVIL ACTION

VERSUS                                          NO: 04-3262

INTERCOSMOS MEDIA GROUP,                        SECTION: "J"(2)
INC.

**ORDER AND REASONS**

Before the Court is plaintiff's **Motion to Reconsider the Judgment**. Defendant opposes the motion. The motion is before the Court on briefs without oral argument.

In his motion, plaintiff seeks reconsideration of the Court's judgment entered on January 13, 2006 imposing sanctions upon him for violations of Federal Rule of Civil Procedure 11. The motion, which is brought pursuant to Federal Rule 59(e) and based upon a Tenth Circuit case, seeks reconsideration due to an intervening change in the law; the availability of new evidence; and the need to correct clear error.[1]

A motion brought pursuant to Federal Rule 59(e) challenges

---

[1] Plaintiff's motion relies on <u>Brumark Corp. v. Samson Resources Corp.</u>, 57 F.3d 941, 948 (10th Cir. 1995).

the validity of a judgment.  Templet v. HydroChem Inc., 367 F.3d 473 (2004), 478 -79 (5th Cir. 2004) (citations omitted).  It is not an appropriate vehicle for "rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment."  Id. (citations omitted).  To the contrary, in the Fifth Circuit, Rule 59(e) motions serve the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence."  Id., quoting Waltman v. Int'l Paper Co., 875 F.2d 468, 473 (5th Cir. 1989).  It is an extraordinary form of relief and as such must be used sparingly.  Id. (citing 11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE & PROCEDURE § 2810.1, at 124 (2d ed. 1995)) (other citations omitted).  The motion must be brought within 10 days of entry of the challenged judgment.  Fed. R. Civ. P. 59(e).

   At the outset, the Court notes that plaintiff's motion is untimely.  Judgment was entered on January 13, 2006.  Plaintiff had ten days from that date, excluding weekends and legal holidays, to file his motion.  Excluding January 16 (Martin Luther King Day) and the intervening weekends, plaintiff was thus required to file his motion not later than January 30.  The motion was received in the Clerk's Office on February 1, 2006.  Nevertheless, because plaintiff's motion is otherwise lacking in

merit, the Court need not deny it on this technicality.

Newly discovered evidence provides a basis for relief under Rule 59 when a court finds that it would likely have changed the outcome of the trial, could not have been previously discovered with due diligence, and is not "merely cumulative or impeaching." Diaz v. Methodist Hosp., 46 F.3d 492, 495 (5th Cir. 1995).  In this case, the "newly discovered evidence" upon which plaintiff relies is an affidavit from the subpoena compliance administrator of Network Solutions, LLC, provided in response to a subpoena duces tecum from plaintiff issued on January 6, 2006 seeking registration information for the domain name 1800asseenontv.com, and the responsive exhibits.  However, there is absolutely no suggestion anywhere in plaintiff's motion (or the rest of the record for that matter) that this information could not have been discovered well before the judgment by making the same simple request earlier to Network Solutions.  In addition, the Court finds that the evidence is cumulative, in that it merely attempts to provide additional support for the argument plaintiff has already made and the Court has rejected, that he personally owned the domain name as opposed to Delor and Associates, Inc.

The Court also finds that the evidence would not have affected the outcome of the case.  A central issue in this

litigation has been who is the real party in interest to maintain the suit.  In the context of this case, that required the determination of who owned the domain name on the date suit was filed, November 24, 2004.  In April 2001, by order of a Florida state court, the ownership of the domain name was frozen in the name of Delor and Associates, Inc. ("DAI").  The only new documentation submitted post-dating that order is an invoice created January 6, 2002, for $70.00 to Delor and Associates (the unincorporated association).  Indeed, the invoice reflects the account status as cancelled.  However, as pointed out by defendant in its opposition, to the extent the invoice demonstrates anything, it shows only that Mr. Delor may have paid the renewal fee.  It does not reflect any ownership in contravention of the Florida court order.

    The Court also notes that some of the evidence recently submitted actually undermines the central tenet of plaintiff's argument, that the only way to change the ownership of a domain name is to change the registrant at the Internet Registry.  Plaintiff's argument presupposes that changing the name in the registry actually accomplishes the transfer, and is not simply the recordation of a transfer.  However, both the ICANN Registrar Accreditation Agreement (Pltf's Exh. G) and the Network Solutions, Inc. Domain Name Registration Agreement (Pltf's Exh.

J) reflect that the registry is just that – a registry for recording an underlying state of affairs.  For instance, paragraph 3.7.7.1 of the ICANN Agreement states that:

> The Registered Name Holder shall provide to Registrar accurate and reliable contact details and promptly correct and update them during the term of the Registered Name registration, including: the full name, postal address, e-mail address, voice telephone number and fax number of available of the Registered Name Holder. . . .

Clearly, this provision contemplates that the Registered Name Holder may change during the term of the agreement independent of any transaction involving the Registrar.  Indeed, the situation that occurred in this case, the transfer of the domain name at issue from Delor & Associates (the unincorporated association) to DAI without notice to the Registrar, placed Delor & Associates in breach of its contract with the Registrar and subjected it to cancellation of the name registration.  ICANN Agreement, ¶ 3.7.7.2.  Likewise, the Network Solutions, Inc. Domain Name Registration Agreement provides that the "Registrant warrants . . . that . . . the information submitted herein is true and correct, and that any future changes to this information will be provided to NSI in a timely manner according to the domain name modification procedures in place at that time.  Breach of this warranty will constitute a material breach."  Network Solutions, Inc. Agreement, ¶ K.  Again, this provision recognizes that

underlying facts (such as ownership) may change without the involvement of NSI.  It is the registrant's obligation to guarantee that the Registry reflects accurate ownership information.  An analagous situation occurs with respect to automobile transfers.  If an individual purchases an auto, and title is actually transferred, the purchaser has an obligation to register the automobile in his name with the Department of Motor Vehicles, but his failure to do so would not mean that the prior owner still owned the car.

Considering the foregoing, the Court finds that the newly submitted evidence would not have changed the outcome of the challenged ruling and judgment, and accordingly, also finds that no manifest error of law or fact was made in this case.

Therefore,

**IT IS ORDERED** that plaintiff's **Motion to Reconsider the Judgment** should be and is hereby **DENIED.**

New Orleans, Louisiana, this __9th__ day of February, 2006.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

6